**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BETH A. EVANS,                *

                      *

    Plaintiff

                      *

    v.                  *        CIVIL NO. JKB-18-935

                      *

MARYLAND STATE HIGHWAY    *
ADMINISTRATION, et al.

                      *

    Defendants         *

                      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Beth A. Evans ("Plaintiff") brought this action for employment discrimination against the Maryland State Highway Administration ("SHA") and Pamela Jenkins-Dobson, the Civil Rights Manager of the SHA. Now pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. (ECF No. 6.) The issues have been briefed (ECF Nos. 6-1, 11), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016). For the reasons explained below, the motion will be reviewed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and will be granted in part and denied in part.

## I. Overview[1]

---

[1] The facts are recited here as alleged by the Plaintiff in her Complaint, (ECF No. 1), and the EEOC documents attached to her Complaint (ECF Nos. 1-3, 1-5), this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The Court may "consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, Civ. No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). To be "integral," a

Plaintiff began working for Horizon Goodwill Industries ("Goodwill") in September 2012. (Compl., ECF No. 1 at 9; ECF No. 1-5.) She initially worked as a sorter in their warehouse and then, one year later, was offered a position as the custodian on Goodwill's contract for janitorial services at the Maryland State Highway Administration. (Compl. at 9.) Plaintiff accepted the offer and began working at the SHA on September 12, 2013, where she had supervisors from both the SHA and Goodwill. (*Id*. at 9-10; ECF No. 1-5 at 1.)

Plaintiff did not report any issues during the first two years of her time at the SHA. In August 2015, however, Plaintiff began reporting workplace issues to Cindy Weaver, the Goodwill employee responsible for overseeing Goodwill's contract at the SHA. (*Id*. at 9-10.) Specifically, in August and September of 2015, Plaintiff told Weaver that she was experiencing "harassment" and having "issues" at the SHA. (*Id*. at 9-10.) Later, on November 22, 2015, Plaintiff reported to Weaver that she was having issues with Shannon Cannon, her supervisor at the SHA, and was exposed to "constant sexual remarks." (*Id*. at 11-12.) In response to these complaints, Weaver told Plaintiff that there was nothing she could do. (*Id*. at 10-12.)

Plaintiff continued to experience workplace issues the following year. On February 5, 2016, Plaintiff fractured her ankle at work. (*Id*. at 12.) When Plaintiff returned to work after her recovery, she informed Weaver and Cannon that she needed to take additional breaks throughout the day to rest her ankle. (*Id*.) Although they approved this request, both Weaver and Cannon complained about Plaintiff's additional breaks. (*Id*.) In addition, not long after Plaintiff returned to work, two male employees had an inappropriate conversation in her

---

document must be one "that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal citations omitted). Plaintiff's EEOC documents are integral to her complaint and may be considered by this Court because they are a necessary precondition of her right to sue, are explicitly referenced in her complaint, and their authenticity is not disputed.

presence. (ECF No. 1-5 at 7.)[2] Specifically, while she was at lunch on April 20, 2016, the men spoke about a small house in the woods where they would take girls and engage in sexual acts. (*Id*.) Plaintiff asked them to stop but they just laughed. (*Id*.)

In turn, Plaintiff's reports of workplace issues continued. (*Id*. at 13, 14.) In May of 2016, Plaintiff told Weaver that "things are getting bad," and that she cries and shakes before work and during her lunch breaks. (*Id*.) Plaintiff also complained to Sally Christensen, an employee in the Human Resources Department of Goodwill, about the way she was being treated by Weaver and about the fact that nothing had been done about the issues Plaintiff previously reported. (*Id*. at 13.) Though Christensen said that she would set up a time to talk with Plaintiff about her concerns, she never did. (*Id*.)

On June 29, 2016, Weaver and her supervisor, Lori Livingston, visited the Plaintiff's job site to conduct an evaluation. (*Id*. at 15.) Livingston informed Plaintiff that she had received several emails from Cannon and another SHA employee, Eric Minnich, about Plaintiff's poor job performance. (*Id*.) Then, during the evaluation, Plaintiff was deducted points for a variety of things, including using improper chemicals and sidestepping the chain of command. (*Id*.)

Plaintiff filed an intake questionnaire with the EEOC on July 5, 2016, in which she reported that she was being subjected to sexual harassment and disability discrimination. (ECF No. 1-5.) One month later, on August 11, 2016, Livingston and Weaver called Plaintiff in for a meeting and informed her that she was being discharged. (Compl. at 16.) They told her that SHA employees Cannon and Minnich asked that Plaintiff not return to SHA due to her lack of work ethics. (*Id*.) Plaintiff was particularly surprised by this news because, two days earlier, Plaintiff received a bonus for her exceptional work. (*Id*.) Plaintiff asked Weaver and Livingston

---

[2] The Court derives the facts concerning this incident from the documents attached to Plaintiff's EEOC Questionnaire but notes that the handwriting is barely legible.

if she could return to work in the warehouse at Goodwill, but they said she was not qualified and that no other positions were available.  (*Id*.)

On November 21, 2016, Plaintiff filed a formal EEOC charge in which she alleged that she experienced continuing discrimination based on sex, disability, and retaliation at the SHA in violation of Title VII of the Civil Rights Act of 1964, codified, as amended, at 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the Americans with Disabilities Act, codified, as amended, at 42 U.S.C. §§ 12111 *et seq*.  ("ADA").  (ECF No. 1-3 at 1.)  After conducting an investigation, the EEOC was unable to conclude that Plaintiff had been discriminated against in violation of either statute.  (ECF No. 1-6.)  The EEOC issued a Notice of Right to Sue letter on December 21, 2017,[3] which Plaintiff alleges she received on January 10, 2018.[4]  (*See* Compl. at 6, ECF No. 1-6 at 1.)

Plaintiff filed the instant suit on April 4, 2018.  (Compl. at 1.)  Liberally construed, Plaintiff asserts claims against Defendants for failure to accommodate her disability (Count I)[5] in violation of the ADA; sexual harassment (Count II) in violation of Title VII; and retaliation (Count III) in violation of Title VII.  (*See id*. at 4.)  Plaintiff seeks monetary relief and a written apology.  (Compl. at 7.)  Defendants filed the pending Motion to Dismiss or, in the alternative,

---

[3] There are two important jurisdictional exhaustion requirements that apply to both Title VII and the ADA: A plaintiff must first file a Charge of Discrimination with the EEOC, and the EEOC must issue a right-to-sue letter. *Roberts v. Am. Neighborhood Mortg. Acceptance Co.*, Civ. No. JKB-17-0157, 2017 WL 3917011, at *2 (D. Md. Sept. 6, 2017) (citing *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995)) (discussing Title VII); *see Snead v. Bd. of Educ. of Prince George's Cty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (exhaustion requirements for ADA are the same as requirements for Title VII).  Plaintiff has alleged proper exhaustion of both of these requirements.

[4] A plaintiff has ninety days to file suit after she receives a right-to-sue letter.  *See* 42 U.S.C. § 2000e-5(f)(1).  The Court notes that Plaintiff's allegation that she received the right to sue letter on January 10, 2018 is dubious in light of the fact that the letter was issued on December 21, 2017.  However, Defendants do not assert Plaintiff's failure to file the instant Complaint within 90 days of receipt of the letter as an argument for dismissal.  Because failure to comply with this requirement does not destroy the Court's subject-matter jurisdiction, but rather is "in the nature of a statute-of-limitations defense," the Court accepts Plaintiff's allegation that she received the letter on January 10, 2018 as true.  *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006).  *See also Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 n.3 (1983) (recognizing that the time period for filing a complaint is not jurisdictional).

[5] Despite instructions to do so, Plaintiff did not number her claims in the Complaint.  Therefore, the Court will number Plaintiff's claims accordingly.

for Summary Judgment on June 7, 2018 (ECF No. 6), which Plaintiff opposed (ECF No. 11). The matter is ripe for decision.

## II. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject-matter jurisdiction. The Plaintiff bears the burden of proving subject-matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (noting challenge may be either facial, i.e., complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, i.e., jurisdictional allegations of complaint are not true); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff.").

While Rule 12(b)(1) is directed toward threshold jurisdictional defects, Rule 12(b)(6) is implicated when the plaintiff fails to state a plausible claim for relief. In analyzing a Rule 12(b)(6) motion, the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Defendants move in the alternative for summary judgment, in support of which they proffer several documents. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). "Nevertheless, a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004)). Where, as here, the Court has not yet entered a scheduling order and Plaintiff has had no opportunity whatsoever to undertake any discovery, the Court is loath to force Plaintiff into a summary-judgment posture. *Cf. Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009) ("As a general rule, summary judgment is not appropriate prior to the completion of discovery."). Accordingly, the Court will decline to exercise its discretion under Rule 12(d) and will instead evaluate Defendants' Motion pursuant to Rules 12(b)(1) and 12(b)(6), excising the supplemental exhibits from its consideration.

While federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson,* 699 F.3d 789, 797 (4th Cir. 2012). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the

work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir. 1985)).

## III. Analysis

### a. Claims Against Defendant Pamela Jenkins-Dobson

Plaintiff filed the instant suit against the SHA and Pamela Jenkins-Dobson, the Civil Rights Manager of the SHA. (Compl. at 2-3.) Defendants argue that Plaintiff's claims against Jenkins-Dobson must be dismissed because she is not an employer under Title VII or the ADA. (Mot. Dismiss Mem. Supp., ECF No. 6-1 at 7.) The Court agrees.

Plaintiff does not specify whether she brings these claims against Jenkins-Dobson in her individual or official capacity; indeed, she does not mention Jenkins-Dobson anywhere other than the caption of her Complaint. However, because Jenkins-Dobson is named in the Complaint as the Civil Rights Manager of the SHA, the Court infers that the claims are asserted against her in her official capacity. As such, the claims are really claims against the SHA, who is already a defendant to these counts.[6] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting governmental entity is "real party in interest" in official capacity suit); *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (holding that claim for monetary damages against public official in his official capacity is, in effect, one against governmental entity employing the official); *Bradley v. Balt. Police Dep't*, Civ. No. JKB-11-1799, 2012 WL 4321738, *2 (D. Md. Sept. 19, 2012) (dismissing claims against individual defendants because "[e]ven if he had sued

---

[6] Though injunctive relief may be sought from a state official sued in his official capacity, Plaintiff here seeks only monetary relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (where "a state official in his or her official capacity [is] sued for injunctive relief . . . 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

these three people in their official capacities, it would be pointless to do so since a suit brought in that manner would still be, in effect, a suit against the Baltimore Police Department, which is already a defendant under these counts."). Thus, the claims against Jenkins-Dobson are dismissed as duplicative of the claims against the SHA.[7]

### b. *ADA—Failure to Accommodate (Count I)*

Plaintiff asserts a claim for failure to accommodate her disability in violation of the ADA. Defendants argue that Plaintiff's ADA claim is barred by the Eleventh Amendment.[8] (ECF No. 6-1 at 8-9.) The Court agrees.

The Eleventh Amendment generally bars suits by citizens against their own state, including suits such as the one here: a suit by a citizen of the State of Maryland which "is in essence one for the recovery of money from the state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). The only relevant exceptions to this general immunity are when the state has consented to suit, or when Congress has abrogated the immunity. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Exp. Bd.*, 527 U.S. 666, 670 (1999). This protection extends to state agencies and state officials when the latter are acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 & n.14 (1985) (holding the Eleventh Amendment bars suit for damages against

---

[7] Even if Plaintiff had intended to sue Jenkins-Dobson in her individual capacity, dismissal would nonetheless be proper. *Lewis v. Baltimore City Bd. of School Comm'r,* 187 F. Supp. 3d 588, 594 (D. Md. 2016) ("Individuals cannot be held liable under Title VII or the ADA.") (citing *Lissau v. Southern Food Servs, Inc.,* 159 F.3d 177, 180 (4th Cir. 1998)).

[8] Defendants raise this argument pursuant to Rule 12(b)(6). The Fourth Circuit has not definitively ruled "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000). However, this Court has favored analysis under Rule 12(b)(1) because, while the Eleventh Amendment cannot be considered a "true limit" on this Court's subject-matter jurisdiction, it nevertheless functions as "a block on the exercise of that jurisdiction," *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). *See Verizon Md. Inc. v. RCN Telecom Servs., Inc.*, 232 F. Supp. 2d 539, 545–46 (D. Md. 2002) (analyzing sovereign immunity claim under Rule 12(b)(1) ), *aff'd in part, dismissed in part sub nom. Verizon Maryland, Inc. v. Glob. NAPS, Inc.*, 377 F.3d 355 (4th Cir. 2004). *See also Marks v. Dann*, Civ. No. DKC-13-0347, 2013 WL 8292331, at *7 n.2 (D. Md. July 24, 2013) (same), *aff'd*, 600 F. App'x 81 (4th Cir. 2015).

state officer in official capacity); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*) (holding the Eleventh Amendment bars suit against state agency); *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (explaining that the Eleventh Amendment affords immunity to states, their respective agencies, and state officials).

Congress did not validly abrogate sovereign immunity with respect to employment discrimination claims for money damages under Title I of the ADA. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-74 (2001). Further, Maryland has not waived its immunity from such claims in federal court. *See McCray v. Md. Dep't of Transp., et al.*, 741 F.3d 480, 483 (4th Cir. 2014); *Charles Mattison, Jr. v. Md. Transit. Admin., et al.*, Civ. No. RDB-15-1627, 2016 WL 2898020, at *5 (D. Md. May 18, 2016). Therefore, because the SHA is indisputably a "state entity" within the ambit of the Eleventh Amendment, Plaintiff's ADA claim against the SHA is dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Strong v. Swaim-Stanley*, Civ. No. WMN-12-1924, 2012 WL 4058054, at *1 n.1 (D. Md. Sept. 13, 2012) (observing that the Maryland State Highway Administration is an arm of the state for purposes of Eleventh Amendment immunity).

### c. Title VII Claims

Plaintiff also asserts claims for sexual harassment and retaliation in violation of Title VII. Defendants argue that Plaintiff's Title VII claims should be dismissed because the SHA was not her employer. (Mot. Dismiss Mem. Supp., ECF No. 6-1 at 11.) The Court will address this argument and then turn to Defendants' claim-specific arguments for dismissal.

### 1. Employment Relationship

"An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant." *Butler v. Drive Automotive Indus. of America, Inc.,* 793 F.3d 404, 408 (4th

Cir. 2015).  Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).  Even if an entity is not a plaintiff's formal employer, it may be an "employer" under the joint employer doctrine if it exercises sufficient control of the terms and conditions of the plaintiff's employment.  *Butler*, 793 F.3d at 408.  The Fourth Circuit emphasized that this doctrine is intended to prevent "those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency."  *Id*. at 410.  In determining whether an entity is an employer under the joint employer doctrine, a court considers the following factors:

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414.  Although none of these factors are dispositive, the first three are the most important.

*Id.*  As the Fourth Circuit explained:

> The first factor, which entity or entities have the power to hire the putative employee, is important to determining ultimate control. The second factor, to what extent the employee is supervised, is useful for determining the day-to-day, practical control of the employee. The third factor, where and how the work takes place, is valuable for determining how similar the work functions are compared to those of an ordinary employee.

*Id.* at 414-15.

Here, Plaintiff alleges that she worked as the custodian on Goodwill's contract at the SHA for almost three years—*i.e.*, from September 2013 until August 2016.  (*Id.* at 10, 16.) Further, Plaintiff alleges that she was directly supervised by an SHA employee and that she received directions from SHA employees.  (*Id.* at 10, 15.)  Plaintiff also alleges that she was required to submit her medical notes to her SHA supervisor when her recovering ankle required her to take additional breaks at work.  (*Id.* at 12.)  Finally, and significantly, Plaintiff alleges that, when she was discharged, Weaver and Livingston said that "Eric and Shannon," both SHA employees, "asked that [Plaintiff] not return to SHA."  (*Id.* at 16.)

Bearing in mind that "Title VII should be liberally construed in light of its remedial purpose," and that this broad interpretation extends to the definition of "employer," Plaintiff plausibly alleges that SHA was her joint employer.  *See Lee v. Mattis*, Civ. No. PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 17, 2018).  Plaintiff's allegations speak to the three most important factors that courts consider when determining whether an entity is an employer under the joint employer doctrine—*i.e.*, that SHA had at least *some* authority to fire Plaintiff, that Plaintiff was supervised by an SHA employee, and that SHA furnished Plaintiff's place of work for three years.  To be sure, the Complaint lacks specificity regarding other factors, such as

whether SHA assumed any responsibility for payroll or provided Plaintiff with any training. However, viewed in the light most favorable to Plaintiff, these allegations allow the plausible inference that SHA controlled key aspects of her employment.

### 2. Sexual Harassment (Count II)

Plaintiff alleges sexual harassment based on a hostile work environment in violation of Title VII. Defendants argue that Plaintiff fails to adequately plead conduct that was sufficiently severe or pervasive to state a claim for sexual harassment. (*See* Mot. Dismiss Mem. Supp., ECF No. 6-1 at 14-15.) The Court agrees.

Title VII makes it unlawful for an employer to discriminate against any employee on the basis of "race, color, religion sex, or national origin." 42 U.S.C. § 2000e-2(a). An employer violates Title VII when the workplace is permeated with gender based "intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklist Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a claim for hostile work environment based on sexual harassment under Title VII, an employee must prove that the harassment was: (1) unwelcome, (2) based on sex, (3) sufficiently severe or pervasive to alter the conditions of employment, and (4) imputable to her employer. *See Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009) (citation omitted). While "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss, these elements inform a court's evaluation of the allegations. *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002).

Not all sexual harassment that is directed at an individual because of his or her sex is actionable. Indeed, Title VII does not attempt "to purge the workplace of vulgarity." *Hopkins v. Balt. Gas and Elec. Co.,* 77 F.3d 745, 753 (4th Cir. 1996) (citing *Baskerville v. Culligan Int'l*

*Co.,* 50 F.3d 428, 430 (7th Cir. 1995)). Rather, actionable conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment" and create an "objectively hostile or abusive working environment." *Harris,* 510 U.S. at 21 (internal citations omitted). Simple teasing, offhand comments, and isolated incidents (unless extremely serious), do not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted). The determination of the sufficiency of an environment's hostility or abusiveness is made by considering all circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

In support of her claim for sexual harassment based on a hostile work environment, Plaintiff alleges that while she was at lunch on April 20, 2016, two men talked about a small house in the woods where they would engage in sexual acts. (ECF No. 1-5 at 7.) Plaintiff further alleges that certain male employees, including Marvin Peck and George Davis, made "comments about engaging in sexual acts, references to [her] body, and references to a building used by employees to engage in sexual acts." (ECF No. 1-3 at 1.) Finally, Plaintiff alleges that the "sexual harassment by SHA employees became unbearable at times," and that she complained to Weaver about the "harassment," "constant sexual remarks," and "issues" she experienced.[9] (*See* Compl. at 10, 11, 14, 16.)

Even liberally construed, Plaintiff's allegations fail to assert conduct that was sufficiently severe or pervasive to state a claim for sexual harassment. Plaintiff only provides specific factual allegations about a single incident involving conduct that, though boorish and

---

[9] Although the allegations in the Complaint largely concern Plaintiff's interactions with Weaver and Weaver's failure to address Plaintiff's workplace concerns, neither Goodwill nor any of its employees was named as a defendant to the instant suit.

offensive, is comparable to the kind of rude behavior and offhand comments that courts have held are not sufficiently severe and pervasive to constitute actionable sexual harassment. *See Hartsell v. Duplex Prod., Inc.,* 123 F.3d 766, 773 (4th Cir. 1997) (holding that comments about a woman's looks and comments demeaning to women were not sufficiently severe and pervasive where there was no inappropriate touching and defendant never propositioned plaintiff). *See also Singleton v. Dep't of Corr. Educ.,* 115 F. App'x 119, 120-22 (4th Cir. 2004). Aside from this incident, Plaintiff's references to "harassment" and "constant sexual remarks" are wholly unsupported by any factual allegations. As such, Plaintiff fails to plausibly allege conduct that rises to the level recognized as hostile and abusive within the meaning of the law. *See Engler v. Harris Corp.*, Civ. No. GLR-11-3597, 2012 WL 3745710, at *5-6 (D. Md. Aug. 28, 2012) (dismissing sexual harassment claim where the complaint was replete with conclusory allegations that plaintiff's coworkers were rude, demeaning, and disrespectful but did not provide specific instances of harassment that lead to a reasonable inference that conduct of male supervisors was severe and pervasive); *Morash v. Anne Arundel Cty.*, Civ. No. JFM-04-2260, 2004 WL 2415068, at *3 (D. Md. Oct. 28, 2004) (dismissing sexual harassment claim where plaintiff only alleged specific facts about a single incident that involved minimal physical contact and plaintiff's other allegations were unsupported by specific factual allegations).

Because Plaintiff fails to plausibly allege severe and pervasive conduct, her sexual harassment claim is dismissed.

### 2. Retaliation (Count III)

Plaintiff also asserts a retaliation claim against SHA for terminating her one month after she filed an EEOC charge. (Compl. at 4, 16.)

Title VII makes it unlawful to discriminate against any employee on account of the employee having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011).

Defendants argue that Plaintiff's retaliation claim should be dismissed because the SHA did not have sufficient notice of the alleged harassment. (Mot. Dismiss Mem. Supp., ECF No. 6-1 at 15.) This argument is misplaced, however, because Plaintiff's retaliation claim does not require that the SHA have had notice of the underlying alleged harassment. Rather, Plaintiff's retaliation claim requires only that the SHA have had knowledge of Plaintiff's protected activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

Further, the Court finds that Plaintiff sufficiently alleges retaliation in violation of Title VII. Plaintiff alleges that she filed an intake questionnaire with the EEOC regarding the alleged discriminatory conduct on July 5, 2016. *See Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994) (stating that filing a complaint with the EEOC is a protected activity). In addition, Plaintiff alleges that she was involuntarily discharged on August 11, 2016. (Compl. at 6, 16.) *See Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 775 (4th Cir. 1997) (recognizing that discharge is an adverse employment action). Finally, as to the third element, viewing the facts in the light

most favorable to Plaintiff, the Court finds that the temporal proximity between Plaintiff's July EEOC filing and the August termination are close enough in time to establish a causal connection at this stage. *See Cox v. U.S. Postal Serv. Fed. Credit Union,* Civ. No. GJH-14-3702, 2015 WL 3795926, at *4 (D. Md. June 17, 2015) (finding a causal connection sufficient to state a claim for retaliation where the adverse action occurred two months after plaintiff engaged in the protected activity); *Clarke v. DynCorp Intern. LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (finding that a two month period between employee's EEOC charge and his termination was sufficient to create a weak inference that the charge led to the termination). Therefore, the Court denies Defendants' Motion to Dismiss with respect to Plaintiff's retaliation claim.

## IV. Conclusion

For the foregoing reasons, all claims are dismissed as to Defendant Pamela Jenkins-Dobson and Plaintiff's claims for failure to accommodate (Count I) and sexual harassment (Count II) are dismissed as to Defendant SHA pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). However, the Court finds that Plaintiff has stated a plausible claim for retaliation (Count III) under Title VII against Defendant SHA and thus denies Defendants' Motion to Dismiss with respect to that count.

DATED this 1st day of October, 2018.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge